John R Burton
6131 Chelton Drive
Oakland, CA 94611
(970) 406-8464
JRBurton5@hotmail.com

**E-filing**

FILED
AUG 27 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN BURTON | ) CV **08**    **4102** |
| Plaintiff, | ) Case No. _____ |
| | ) |
| vs. | ) COMPLAINT    *RS* |
| | ) |
| | ) DEMAND FOR JURY TRIAL |
| CITY OF KANAB, UTAH, and | ) |
| KANE COUNTY, UTAH, and | ) |
| STATE OF UTAH, and | ) |
| ERIC LIND, FORMER PROSECUTOR, | ) |
| MARK FISHER, POLICE OFFICER | ) |
| UTAH STATE BAR | ) |
| | ) |
| Defendants. | ) |

1.   **Jurisdiction.** This court has jurisdiction over this complaint because it arises under the laws of the United States.

2.   **Venue.**  Venue is appropriate in this court because the plaintiff and the defendants live in different states, and also because the superior assets of the defendants and possibility of remote (on-line) testimony means defending themselves here is not a hardship.

3.   **Intradistrict Assignment.** This lawsuit should be assigned to the San Francisco Division  of the Court because the Plaintiff lives close to it.

4.   Plaintiff is self-employed.

**John R Burton, 6131 Chelton Drive, Oakland, CA, 94611. JRBurton5@hotmail.com**

8-27-08

**COMPLAINT: 54 COUNTS—DEMAND FOR JURY TRIAL**

Against the City of Kanab and mark Fisher (individually and officially) Re: 0031600040:

1) Dickie Robinson was not acting within the scope of her duties as a librarian by babysitting the victim. Nevertheless, if she believed the victim was mentally incompetent, she should not have seated her beside me, failed to warn me about her condition, and failed to try to stop her from leaving with me. Her failure to do these things constituted contributory negligence, and resulted in dire consequences for me. The city that employed her bears responsibility for her behavior.

2) Dickie Robinson perjured herself with respect to several issues: the assignment of computers; her claim about being distracted by another guest; and her claim about the amount of time I spent outside of the library. It is difficult to assess how much her perjured testimony hurt me. The city bears responsibility for her actions.

3) Mark Fisher, who arrested me for child kidnapping (as the victim affirmed) committed false arrest, since the victim was over fourteen years old at that time. It would have been a very simple matter to ask her whether she'd gone with me by choice and how old she was, but he didn't bother. And he could have detained me without arresting me, while trying to establish whether an offense had occurred.

4) If we are to believe Mark Fisher's later claim, made under oath, that he arrested me for unlawful detention (per the transcript), then by dint of the victim's testimony that he also slammed me down upon my own car at that time, he has been implicated for having used force on a b misdemeanor, which is unlawful. None of these: false arrest, perjury, or unlawful brutality fall within the scope of his duties.

5) Inasmuch as Mark Fisher withheld the crucial exculpatory evidence (the victim's testimony that I'm her friend)—as was revealed at the preliminary hearing— then he was acting outside his duties there too, and cannot be protected by the statute of limitations for that transgression either.

6) Mark Fisher created a hostile climate, antithetical to disclosure at a time when he should have been promoting truthful disclosures as a prelude to filing proper charges. Since he then used my refusal to talk to him as an excuse to file harsher charges, and was instrumental in driving the prosecution thereafter, creating that hostile climate antithetical to justice constitutes a tort.

Against Kane Co., & Eric Lind (Individually and as an agent of Kanab/Utah/Kane Co.)

Re: Case # 0031600040

7) County Attorney Eric Lind improperly added a late charge-- at the level of a first degree felony-- lacking either new evidence or a new understanding of the existing evidence, as is required.

8) Eric Lind either directly suborned the victim's perjury or turned a blind eye to her various advocate's attempts to do so.

9) Even believing his claim that the victim really had strenuously protested at the time of the offense, and that that claim constituted new evidence, then we are left with the fact that in response he did not even level the charge that that evidence would have supported (kidnapping), but instead charged something that it did not support (aggravated kidnapping). The detention element had already been established, so the "new" claim added neither a new element nor a new understanding.

10) That being true, and given the statute's wording, his not having leveled the charge sooner suggests that he himself had not subscribed to the judge's definition of detention before the preliminary hearing, which implicates him for having failed to provide the exculpatory evidence that I had *not* detained her (her claim that she had defended me as her friend)—by whatever definition he had been embracing until that time. He cannot claim he'd believed that merely going anywhere with the victim was sufficient, because in that case he wouldn't have needed new

evidence to raise the charges, and would already have filed aggravated kidnapping and kidnapping. Nor would any claim about his benevolent leniency hold water, since leniency does not level 1st degree felonies on lean and flimsy elements.

11) Inasmuch as that new claim was mere bluff anyway, but was actually used towards leveling a new charge, then Eric Lind is neither immune nor protected by the statute of limitations, because his leveling of the new charge was not in keeping with the rules of "advocacy", but were rather a violation of the rules of "evidence", and is not protected as a core-duty of the prosecutor. Eric Lind ran egregiously afoul of the rules of evidence to my extreme detriment and harm

12) Because Eric Lind has an absolute duty to turn over exculpatory evidence, then even where he is legally enabled to manufacture evidence and suborn perjury he is at the same time required to inform the defense that that such evidence is false. He did not do this. Yes, it's true that this conflict creates a quandary, but it is not a case of conflicting rights having to be weighed: it is a non-negotiable duty.*

13) Eric Lind engaged in selective prosecution by creating circumstances in which a far more heinous criminal was positioned to have all charges against him dropped. Lind's premature resignation only tempers but does not absolve this transgression, since his actions and four-year delay predictably foreshadowed that result. Any suggestion that he could not have gotten a conviction in that case anyway due to the victim being an unreliable witness is absurd, and must be viewed through the

dual lenses that he must also have believed she was unreliable in *my* case—while he continued to hammer me regardless— and against the fact that his entitlement to manufacture evidence and thus nullify that reliability problem was available in the other, more egregious case as well.* Thus, given that entitlement, manufacturing evidence in one case but not another constitutes selective prosecution.

14) Eric Lind further engaged in selective prosecution by neither prosecuting the victim's mother nor the librarian for child endangerment. Since he claimed the victim was mentally incompetent then she must have been equally incompetent with respect to their behavior as well.

15) By including a misdemeanor among the (dropped) charges brought against the victim's father, Eric Lind signified that he believed she had given consent to at least some of the sexual activity in his case. It means he believed her capable of giving consent at a much earlier time than her incident with me, and that she was therefore obviously not mentally incompetent before! That is not just another example of selective prosecution but raises probable cause issues too.

16) Eric Lind improperly empowered the victim's mother with special status, even though she was guilty of a related crime flowing from the same incident. This was unlawful. (CPS cited the victim's mother for child endangerment, as her own testimony showed). Furthermore, his bowing to her prosecutorial wishes was improper for the same reason. He did not need to bargain for her testimony.

17) The victim's mother and the arresting officer having been granted special status, the county must uphold special expectations with respect to their comportment, and be assiduous in eliciting truthful testimony and revelation of any exculpatory evidence known by them. The county did not meet this standard. Withheld evidence included the victim's exclamation that "He's my friend", as well as everything we can reasonably assume Nola Magnum learned from her daughter after the preliminary hearing as a result of the questions asked there. By way of investigation, Eric Lind should have asked Nola if any of the provocative questions asked of the victim at the preliminary hearing had born exculpatory fruit.

18) Along those lines, it may be true that the prosecutor has an allowance to suborn perjury, but that right does not extend to the victim's mother too. Thus we have a conspiracy to suborn perjury, which goes beyond the prosecutor's entitlement. *He* may be allowed to suborn perjury, but neither he nor she may *conspire* to do so. This was a civil liberties violation.

19) Eric Lind failed to zealously pursue critical exculpatory evidence, and stopped short of asking important questions even when confronted with golden opportunities to do so. When the victim said that I had touched her breast, for example, while taking the lie-detector test that he requested, he did not ask if that touch might have been an accident, nor did bother to ask whether I had touched her anyplace more egregious. Those omissions speak to a lack of interest in the truth,

and goes directly to the issue of whether he ever believed his charges were
supported by probable cause.

20) Eric Lind engaged in malicious prosecution by maintaining two contradictory
claims about the victim's behavior: that she both vehemently protested—and thus
proved her competence to withhold consent—and that she did not protest, which
supposedly proved her incapacity to do so. Failing one he switched to the other.

21) Eric Lind further engaged in malicious prosecution by continuing to prosecute a
crime that rested on the victim's mental incompetence even after the judge had
judged her competent. Only a malicious prosecutor would have continued to push
this case after that, having been utterly defeated at the preliminary hearing.

22) Yet another example of Eric Lind's malicious prosecution was evinced by his use
of a statute that utilized conflicting standards of liability and competence on either
side of its grab-bag cornucopia of culpability elements.

23) Another instance of malicious prosecution was effected by his employment of a
law that featured contradictory standards for the detention elements, leveling an
aggravated kidnapping charge (thus maintaining that a kidnapping had occurred)
concurrent with a charge specifying "circumstances falling short of a kidnapping"

24) A fifth plank of Eric Lind's malicious prosecution was demonstrated by his absurd insistence that enticement to sexual activity was established by the mere opening of a car door. Inasmuch as the prosecutor's code of ethics holds that a prosecutor must not pursue charges that he does not believe are supported by probable cause, then any standard that insists on more than the mere wink-winking at any claim he might make about what he believes would be hard pressed to accept that even he could have believed such a thing. Thus he violated the prosecutor's code of ethics there too, to my extreme harm.

25) A sixth instance of malicious prosecution was effected when Eric Lind—after insisting that he did not believe my violation was worth going to prison over-- raised the stakes to a 1st degree felony with mandatory prison anyway after I refused to give him a plea to a felony which was already far in excess of what he should have charged. Later he claimed that he only pursued this case so hard because I was from out of state and didn't know of any other way to control me. In other words he parlayed a misdemeanor into to a 1st degree felony for "control" purposes—in the face of probable cause, and even where he could have maintained control by other means, such as via a plea-in-abeyance. Control concerns are not synonyms for probable causes.

26) Instance seven of malicious prosecution stems from the fact that Lind's determination to secure a serious conviction was apparently motivated by the indemnification of Mark Fisher against his transgressions. Such behavior informed my

reluctance to complain sooner and illustrates the fundamental unfairness of the state's self-serving statutes-of-limitations.

27) Eric Lind improperly meddled in my counseling recommendation, thus furthering the climate of distrust, persecutorial mania, and hostility to justice he had created. That behavior only fanned the flames of my belief that Damocles' Sword was poised to drop on me at any time, at his vindictive whim, if he should decide to manufacture new evidence to show that I had run afoul of my plea-in-abeyance. My recommendation did not call for sex-specific counseling, but the version of my recommendation supposedly "approved" by Eric Lind did. And since I could not at that time get clarity about what my recommendation was, then Eric Lind's power to arbitrarily and vindictively claim I'd failed to comply was fully enabled.

28) John Hummel, Eric Lind's successor, in also refusing to address my questions and issues about my counseling expectations (after my counselor had altered it, my attorney had quit, and I was representing myself) left me still not knowing what my expectations were, thus further promoting an atmosphere in which I could not reasonably know whether I was running afoul of my agreement—or whether the prosecutor's office was looking for excuses to say that I had. Against that back-drop it was reasonable for me to believe that filing grievances would have met with retaliatory efforts— such as claims that I was not meeting those expectations

29) Eric Lind abused evidentiary procedure by sending us a blank video-cassette, and by delaying the transcription of the preliminary hearing.

30) Not only did Eric Lind delay the sending of the transcription but he actively participated in re-wording and omitting important parts of it to my extreme detriment

31) Eric Lind violated my civil liberties by attempting to intimidate me out of going to trial through additional means, including a false claim of trauma to the victim, and by sending a photo depicting a so-called scratch on the victim's stomach.

32) By allowing the girl's mother to transport her to the hospital, he created a circumstance in which manufacturing evidence of her own would be an easy matter. My presumption and contention is that she did exactly that: that Nola Mangum made the scratch, which was an act of child abuse the prosecutor conveniently ignored.

33) By allowing an already improperly empowered person to aid in these attempts to intimidate me, Eric Lind otherwise engaged in an unlawful conspiracy to obstruct civil liberties. *He* may have immunity but *she* doesn't. Neither are free to conspire

34) The foregoing event amounted to a conspiracy to manufacture evidence as well.

35) The totality of all these transgressions, combined with the delaying of every exculpatory disclosure, constituted an egregious abuse of process by Eric Lind.

36) By clandestinely turning away a phone call from my selected lawyer because I was talking to the public defender at the time-- who had conveniently shown up after I'd called that lawyer-- and by not even letting me know he had called—the city committed an unwarranted interference with my right to representation.

37) Other abuses of process were committed when at the completion of my plea-in-abeyance the prosecution's empowerment to level charges magically reappeared and was lorded over me again—and by their refusal to answer my letter of inquiry about what their behavior meant. Thus, Damocles' intimidating Sword was raised again. (That sequence of events supported my contention that I had real cause to feel fearful of their extra-legal shenanigans all along, as I had. Indeed, why should I have thought that had I withdrawn my plea then that they wouldn't have filed new charges, manufactured new evidence, and reassigned Eric Lind to prosecute my case? Fear of retribution for filing grievances bespeaks unlawful intimidation.

38) By neither investigating nor disciplining Eric Lind for his appalling behavior in this matter the county bears a responsibility for his behavior that goes above and beyond the mere responsibility that inheres with employment. By failing to discipline him the county nurtured and encouraged the atmosphere of fear of retaliation for filing a grievance. It suggests that they sanctioned his actions.

39) The county was negligent in allowing the crucially important recording of the preliminary testimony to be of very low quality, replete with 32 omissions-- the significance of which it is difficult to judge, but four of which were clearly very important-- as well as for failing to provide the transcript in a timely matter. In addition several of the recorded exchanges that *were* recorded were altered.

40) The totality of underhanded methods used by the prosecutor amounts to an evil and depraved prosecution, greater than the sum of its parts.

41) The prosecutor insisted on my taking a PPG test as part of my plea-in-abeyance, even though no sexual impropriety was part of my conviction. This was unlawful, and whether I agreed to do it was immaterial. They had no right to even ask for it

*(If the state wishes to sanction the prosecutor's entitlement to manufacture evidence then they must take responsibility for all its implications.)

Against the State of Utah:

42) In passing Aggravated Kidnapping law 76.5.302, the Utah Legislature abrogated its own expressed intentions under 76-1-104 (2-4) by its un-defining of a key term. Abrogation of its expressed duties is not itself an official duty, so the legislature cannot be protected by the statute of limitations.

148    **76-5-304. Unlawful detention.**

149    (1) [A person] *An actor* commits unlawful detention if [he] *the*
*actor intentionally or*

150    knowingly, *without authority of law, and against the will of the*
*victim, detains or* restrains [another

151    ~~unlawfully so as to interfere substantially with his liberty~~]...


43) The state failed to give adequate constitutional scrutiny to their own law, given its
resultant power of a prosecutor to construct a 1st degree felony from the extremely
light standard of two b misdemeanors, requiring no interference with liberty at all.
That such a standard would allow cruel and unusual punishment as well as arbi-
trary enforcement should be obvious to anyone. In support of this, no other state
features such a multi-tiered grab-bag of elements within a single criminal statute
and every other state defines detention in its kidnapping statutes.


44) In passing this grab-bag law, and by failing to clarify standards for its usage, the
legislature has enabled a draconian prosecution, in which even lacking an
aggravating factor (having been dismissed), and left with an improperly elevated
charge (now unsupported), the judge was still able to level a final charge in excess
of what even a rabid prosecutor charged, which employed contradictory language.
The prosecution should not have been allowed to benefit from the fruits of its
improperly elevated charges, but it did anyway. This was the state's fault.

45) In the same way, and at the same time, the statute enabled malicious prosecution.

46) By allowing the judge's definition to be put forth, the state created a situation in which what any reasonable person would believe constitutes exculpatory evidence in a detention case ceased to be exculpatory evidence, and so lost its incumbency upon the prosecutor to produce.

47) The state Supreme Court, in mandating my Attorney's appearance at another far-away court on the day after my trial, while refusing to allow him a delay for a case already scheduled, showed a disturbing contempt for my civil liberties, and created a hardship for me. This was a denial of Due Process.

48) In allowing a prosecutor to manufacture evidence without accountability, to suborn perjury without accountability, and to engage in all manner of chicanery and intimidation without accountability, the state of Utah is guilty of enabling and promoting malicious prosecution, selective prosecution, civil liberties violations, criminal conspiracies, inadequate investigation, failure to turn over exculpatory evidence, and ethics violations. It is also guilty of engendering valid fear on the part of the defendant that prosecution is empowered to manufacture evidence for anything at any time after an arrest has been made, including evidence that the defendant has run afoul of the terms of his agreement. Under such circumstances, a defendant dare not risk retaliation that might similarly be coddled by the courts.

49) Through all of the above as well as via the totality of other abuses and transgressions here enumerated and enlisted the state of Utah has enabled a circumstance

in which a person convinced of his own innocence in a criminal matter has felt

compelled to plead guilty to his supposed crime anyway. This is outrageous.

50) By amending the kidnapping laws again in 2008 but still neglecting to rectify its

multiple deficiencies, the State has thumbed its nose at legions of potential future

defendants. Inasmuch as no one-year statute of limitations for bringing action

against the state for that legislative action has expired, and inasmuch as the

amendment  appends to an intolerable statute that by being revisited but not

adequately revised  has once again been given the state's imprimatur, and inas-

much as the indefensible statute has deeply harmed me, as it will no doubt simi-

larly affect a multitude of defendants yet to come, and who will also be rendered

powerless in the face of the State's appalling allowances, I assert standing to sue

on their behalf, for this appalling negligence. Once charged, they will not be able

to mount a reasonable defense against its draconian implications, given the State

of Utah's hostility to justice, the mechanisms of intimidation, common-sense

torturings, and unaccountable-for shenanigans made available to prosecutors, not

to mention the flailing and senseless enablings afforded judges who preside over

the proceedings.

51) By failing to write a law that could be reasonably interpreted, the Legislature

enabled the Judge to torture the claim that the victim had a low IQ into "it has

been alleged that she is mentally incompetent", so as to then play the role of

prosecutor and level a new charge in excess of what even the malicious prose-

cutor charged, one element of which remained the mental incompetence of the victim, even after having ruled that she is *not* incompetent. That ruling caused me enormous psychological and monetary suffering

52) By invoking a one-year statute of limitations per 63-30 (letter from Richard Sandoval, Claim Adjuster, dated July 17, 2008) against bringing action against the state or its agencies, and asserting that that limitation runs even during periods while the local entities retain the power to retaliate for the complaining itself, and regardless of the fact that the ability of the state or its entities to defend itself against  my complaints would not be compromised by the maintenance of a larger window of  action anyway, but has merely arbitrarily asserted this window, the State has denied me due process.


Against the Utah State Bar:

53) Because it is charged with being the entity that disciplines errant attorneys, then by refusing to furnish information regarding potential misbehavior that might help identify same, under the absurd guise of not be allowed to give legal advise(via its advocate Sheradee Fleming, in her letter of response to my letter to her, dated  ), the Utah State Bar (association) has impacted my due process, and has shown an alarming penchant for shielding the very people it is charged with overseeing.

54) By failing to maintain comprehensive and adequate standards and ethics for pros-ecutors, such as that he "will refrain from charging anything out of proportion to the severity of the offense", the Bar has enabled unaccountable-for draconian and malicious prosecution. This is criminally negligent behavior.

**PRAYER FOR RELIEF:**

In compensation for their negligence, malice, and assorted evil deeds, I seek

1) Remunerative, compensatory, and punitive damages in the amount of $25,000,000 (twenty-five million) dollars or its equivalent in property.

2) Disbarment and prosecution of Eric Lind for a litany of crimes & abuses as a result of the facts revealed and confirmed by this action.

3) The firing of and loss of pension to Mark Fisher.

4) The over-turning of the Aggravated Kidnapping law and the freeing of any defendant who has been convicted under it via less than the most severe transgressions.

5) The legislative re-writing of that kidnapping law so as to include a defensible definition of detain, standardization of the consent elements, clarification of the incompetence elements, and removal of unlawful detention from its list of planks.

6) Clarification about the evidentiary vs. advocacy capacities of the prosecutor, and clarification about the absolute and qualified immunities related to those capacities.

7) The legal barring of the prosecutorial entitlements to manufacture evidence, suborn

perjury, add charges on the basis of mere bluff, and conduct inadequate and opportunistic investigations.

8) Clarification about the circumstances under which a prosecutor may add late charges.

9) The adding to the Prosecutor's Code of Ethics the requirement that charges leveled bear some reasonable relationship and proportion to the severity of the offense.

10) The statutory modification of Utah's statutes of limitations regarding bringing action against it so that it does not run concurrent with any power of the State to retaliate, file new charges, manufacture evidence, or withhold crucial information about a case.

11) A personal apology from the Governor of the State of Utah over lunch.

**SIGNATURE:**

**John R Burton, JRBurton5@hotmail.com, (970) 406-8464**

Plaintiff demands a jury trial on all issues.        8-27-08

Hon. Mark Shurtleff
Attorney General,
State of Utah,
Office of the Attorney General
Utah State Capitol Complex
350 North State Street Suite 230
SLC UT 84114-2320

Keith McAllister
City Recorder (for the)
City of Kanab
76 N Main
Kanab, UT 84741

Karla Johnson
Kane County Clerk (for)
Kane County
76 North Main
Kanab, UT 84741-0050

Eric Lind
Red Rock Mortgage
34 No. Main Street
Kanab, UT 84741

Mark Fisher
542 E 180 S,
Kanab, UT 84741

Executive Director
John Baldwin
Office of Professional Conduct, (for the)
Utah State Bar
645 So. 200 East, Suite 205
Salt Lake City, Utah 84111-3834

# CIVIL COVER SHEET

% *JS 44* (Rev. 12/07) (cand rev 1-16-08)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)*

## I. (a) PLAINTIFFS

JOHN BURTON

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

Alameda

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

**DEFENDANTS** CITY OF KANAB, UTAH; KANE CO. UTAH; STATE OF UTAH; UTAH STATE BAR; MARK FISHER; ERIC LUND

County of Residence of First Listed Defendant   KANE COUNTY, UTAH
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [X] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— Med. Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury — Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 690 Other | | [ ] 490 Cable/Sat TV |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | [ ] 810 Selective Service |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 195 Contract Product Liability | | | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 196 Franchise | | | [ ] 730 Labor/Mgmt.Reporting & Disclosure Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 740 Railway Labor Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 892 Economic Stabilization Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | **Habeas Corpus:** | [ ] 791 Empl. Ret. Inc. Security Act | | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 530 General | | **FEDERAL TAX SUITS** | [ ] 894 Energy Allocation Act |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 895 Freedom of Information Act |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities — Employment | [ ] 540 Mandamus & Other | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities — Other | [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 440 Other Civil Rights | [ ] 555 Prison Condition | [ ] 463 Habeas Corpus — Alien Detainee | | |
| | | | [ ] 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause: CIVIL LIBERTIES VIOLATIONS, FALSE ARREST, UNNECESSARY FORCE, MALICIOUS PROSECUTION, SELECTIVE PROSECUTION, NEGLIGENCE, EVIDENTIARY ABUSES, ABUSE OF PROCESS

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
- DEMAND $ 25,000,000 + SPECIFIC ACTIONS !

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

- [ ] SAN FRANCISCO/OAKLAND
- [X] SAN JOSE

DATE  8/27/08    SIGNATURE OF ATTORNEY OF RECORD